RECEIPT # 61466
AMOUNT $ 150
SUMMONS ISSUED ✓
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 1-14-05

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EILEEN GRADY, ) | |
| Plaintiff, ) | |
| v. ) | CIVIL ACTION NO. |
| WAREHAM POLICE DEPARTMENT, ) | |
| TOWN OF WAREHAM, ) | |
| THOMAS JOYCE (individually), and ) | |
| MICHAEL J. HARTMAN (individually), ) | |
| Defendants. ) | |

05 10097

MAGISTRATE JUDGE ___

## COMPLAINT AND JURY DEMAND

### Introduction

Plaintiff Eileen Grady (formerly Eileen Hinckley) brings this action against her employer Wareham Police Department ("the Department"), the Town of Wareham ("the Town") and certain individual defendants, alleging, among other things, discrimination on the basis of sex. She claims (a) violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq., as amended in 1991, and the Massachusetts Fair Employment Practices Law, M.G.L. c. 151B, § 4(1); (b) interference in violation of M.G.L. c. 151B § 4(4A); (c) aiding, abetting, inciting, compelling and/or coercion in violation of M.G.L. c. 151B § 4(5); and (d) tortious interference with contractual/advatagous employment relations.

### Jurisdiction

1. This Court has federal question jurisdiction and supplemental jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

### Procedural Background

2. Plaintiff Grady timely filed her Charges of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC") on June 14, 2004, and has met the administrative prerequisites to filing suit under Title VII and Chapter 151B.

## Parties

3. Plaintiff Eileen Grady ("Grady" or "Plaintiff") is an adult female who resides in Bourne, Barnstable County, Massachusetts. She is, and at all relevant times, was an employee of the Defendant Wareham Police Department and the Defendant Town of Wareham.

4. Defendant Wareham Police Department is, and was at all times relevant hereto, located in Wareham, Plymouth County, Massachusetts.

5. Defendant Town of Wareham is in Plymouth County, Massachusetts.

6. Defendant Thomas Joyce ("Joyce") is an adult male who resides in Wareham, Plymouth County, Massachusetts. Joyce is the Chief of the Wareham Police Department.

7. Defendant Michael A. Hartman ("Hartman") is an adult male who resides in Mansfield, Bristol County, Massachusetts. Hartman is the Town Administrator for the Town of Wareham.

## Facts

8. Grady began her law enforcement career in 1985 when the Wareham Police Department ("the Department") hired her as a Patrol Officer after she graduated from the state training center with the 5th highest academic ranking.

9. Grady was the first female officer to be hired full time by the Department.

10. In her near eighteen years with the department, Grady, despite being subjected to adverse treatment because of her sex, has performed well as an officer and leader and obtained numerous accomplishments.

11. From 1985 through 1996 she served as a Patrol Officer with responsibility for, among other things, investigating complaints, making arrests and providing court testimony. During this time, she also had several additional collateral duties, including serving as a Sexual Assault Investigator, Honor Guard, School Safety Officer and Drug Abuse Resistance Education Officer.

12. As a Patrol Officer she received positive performance evaluations with ratings between a "4" and a "6" out of a rating scale of "1" to "7."

13. In 1996, she was promoted to the position of Sergeant, and had responsibility for,

among other things, supervising a minimum of five patrol officers and two dispatchers during the evening shift. As Sergeant, Grady performed well.

14. While working full time as a Patrol Officer and later as Sergeant, Grady pursued degrees in criminal justice. Grady obtained her Bachelor of Science in Criminal Justice from Bridgewater State College in 1994, and her Master of Science in Criminal Justice from Western New England College in 2000.

15. Grady also received numerous training certificates in specific areas. For example, in 1996, Grady completed a Command Training Program at the New England Institute of Law Enforcement Management. As another example, in 1999 Grady completed a training on Terrorism Awareness at the Federal Emergency Management Agency.

16. Throughout her tenure with the Department, Grady was commended by the Department for her positive relations with the community. Indeed, Grady received a number of awards from various community organizations, including a Public Safety Award in 1988 from the Wareham Kiwanis Club, an Outstanding Community Service Award in 1990 from the Plymouth County Education Association, a Woman of the Year Award in 1992 from the Wareham Business and Professional Women's Club, and an Outstanding Service Award in 1992 and 1993 from the Plymouth County District Attorney.

17. Grady also consistently performed exceptionally well on police civil service examinations throughout her career. For example, she obtained a perfect score of 100 on her entry-level civil service exam.

18. Despite her above-stated accomplishments and successes, Grady was treated less favorably than her male peers based upon gender stereotypes, and was subjected to discriminatory treatment because of her sex.

19. As a result of this discrimination, male officers rose through the ranks in the Department more rapidly than did Grady.

20. For example, when she began in 1985 with the Department Grady was placed on desk

duty while her male academy classmate, Kevin Walsh, was immediately assigned to patrol. Male patrol officers told her that someone was likely to get hurt if she was on the road.

21. After demanding equal treatment, Grady was given sporadic and unstructured training at night. She was then assigned to patrol, but was placed on the day shift while several of her male peers (some of whom started with the Department years after her, including Donald Bliss who started with the Department in 1987) were immediately assigned to the night shift.

22. When Grady first started with patrol, one of her supervisors, Sergeant Wayne Dudley, told her, "You don't belong here. I don't want you. I don't have time to baby-sit," or words to that effect. Sergeant Dudley would also frequently make sexually offensive comments to her.

23. In approximately 1990, there was an opening for the position of Sergeant.

24. Throughout the history of the Department, the Department's practice was to promote the candidates with the higher scores on the promotional civil service exam.

25. Grady applied for the position and earned the second-highest score on the civil service exam determining promotions to the position of Sergeant.

26. Chief Thomas Joyce, deviating from the Department's practice of promoting candidates with the higher scores, chose to bypass Grady, citing her lack of night experience, and instead promoted the third highest scorer, Glenn Gifford. (Shortly thereafter, the highest scoring examinee, Jeff Perry, was also promoted to Sergeant.) Grady immediately requested and was granted reassignment to the night shift.

27. In approximately 1992, a Sergeant position again became available within the Department. Despite the fact that Grady's name was at the top of the list, and she now had night experience, she still was not promoted.

28. Instead, Chief Joyce ordered the administering of a new exam, claiming he had allegedly "forgotten" about the existing list.

29. Grady took the new exam in approximately 1992, scoring fourth highest, and two males scoring ahead of her were promoted to Sergeant in approximately 1992 and 1993 respectively (including Donald Bliss in approximately 1993).

4

30. In approximately 1994, a Detective position became available. Grady applied for the position, but Chief Joyce decided to appoint a male patrol officer, Preston Urquhart, to the Detective position. Preston Urquhart started with the Department in approximately 1988, and had less experience and less seniority than Grady.

31. In approximately 1996, another Sergeant position became available, and, after a male officer who was third on the list declined the position, the Department finally promoted Grady to the position of Sergeant.

32. Thereafter, Chief Joyce subjected Grady to demeaning treatment at Sergeant meetings, which were often attended by Chief Joyce, and almost always attended by the Department's Captain, the Lieutenant to whom Grady reported and by all Sergeants in the Department.

33. For example, when Chief Joyce would use words that were mildly offensive at best (e.g., "damn") at such meetings, he would sometimes cover Grady's ears with his hands.

34. Other times, Chief Joyce would look directly at Grady after using mildly offensive words and say in a patronizing tone, "Pardon my French young lady," or words to that effect. Grady (born July 31, 1954) was in her forties at the time Chief Joyce would make these comments.

35. Thus, Grady was singled out in front of her peers and superiors, and embarrassed by the highest-ranking officer in the Department, because of her sex.

36. Despite this adverse treatment, Grady worked hard and received a positive performance review in 1999 from her superiors, Captain Paul Cardalino and Lieutenant Arthur Brightman, regarding her performance as a Sergeant.

37. In her review, she was commended for, among other things, her leadership and supervision abilities.

38. In addition, during Grady's tenure as Sergeant three separate murders occurred while she was on duty as shift supervisor of several patrol officers. Her leadership, judgment and decision-making contributed to her shift's efficient response and execution of proper procedures. Suspects were arrested in all three murders.

39. In or about July 2001, a Lieutenant position became available in the Department and

there were three candidates for the position: Grady, Detective Sergeant Donald Bliss, and Sergeant Glen Gifford.

40. Throughout the history of the Department, the practice had been that the candidate with the highest score on the Lieutenant promotional civil service exam was promoted.

41. However, knowing full well that Grady had a reputation for scoring high on civil service exams, in July 2001 Chief Joyce announced an unprecedented multi-faceted selection process for promoting Sergeants and Lieutenants. The factors included a promotional test score, a Department interview, a review of performance and personnel records, and an evaluation conducted by an outside assessment center.

42. This was the first and last time that this "multi-faceted" selection process was used.

43. On October 20, 2001, Grady sat for the Lieutenant promotional exam along with the other candidates, and on December 17, 2001 the exam results were announced. Grady obtained the highest score of 88, which far exceeded those of the other candidates. Glen Gifford obtained the second-highest score of 78, and Donald Bliss obtained the third-highest score of 75.

44. Nearly two years later, on August 28th and 29th of 2003, the other candidates for the Lieutenant position and Grady underwent an evaluation by an assessment center that was almost entirely subjective.

45. The evaluation was conducted by the BadgeQuest Assessment Center, which used three male assessors (Chief William Chase, Chief Lincoln Miller and Chief Gary Russell), and was coordinated by another male, Chief Stephen Unsworth.

46. As part of the BadgeQuest process, Chief Joyce appointed two of the assessors. Of the two assessors chosen by Chief Joyce, one was Chief Miller of the Marion Police Department.

47. Chief Miller's department has never had a female officer. Further, Chief Miller is a longtime friend of Chief Joyce (Chief Joyce served as the best man in both of Chief Miller's weddings).

48. Although the assessors were charged with evaluating the candidates, the ultimate

selection was made by Chief Joyce, which was then approved by the Town of Wareham's Town Administrator, Michael J. Hartman.

49. The evaluation conducted on August 28th, 2003 was a writing exercise.

50. The evaluation conducted on August 29th, 2003 was a series of four exercises, followed by an oral interview, all conducted by and in the presence of the assessors. For example, the first exercise given on August 29th, 2003, required that Grady respond to a mock citizen complaint in the presence of the assessors. In addition, on August 29th, 2003, during "down time" the other candidates and Grady were given a second writing exercise that was evaluated by Chief Joyce.

51. Approximately one week after August 29, 2003, the other candidates and Grady were individually interviewed by Chief Joyce. During the interview, Grady told Chief Joyce that she was also interested in the (higher-paid) Detective Sergeant position currently held by Donald Bliss should that position become available if she was bypassed and Donald Bliss was promoted to Lieutenant.

52. On or about September 24, 2003, Chief Joyce notified Grady of the Department's selection for promotion to Lieutenant. Despite the considerable gap between the civil service exam scores of herself and Donald Bliss and the considerable gap in their education levels (Grady has a Masters Degree while Donald Bliss has an Associates Degree), the Department bypassed Grady and instead promoted Donald Bliss.

53. As its purported reason for the bypass decision, the Department stated vaguely that Grady "did not fare well in the categories of Leadership, Judgment and Decision Making," despite the fact that her overall BadgeQuest score of 7.4 (which included Leadership, Judgment and Decision Making) qualified for the above-average rating of "Very Good." Further, the afore-mentioned highest civil service exam score of 88 covered the skill areas of leadership, judgment and decision-making.

54. The Department also stated vaguely that, in both the writing exercise and oral interview, Grady allegedly did not provide suggestions to solve identified problems, despite the fact that she obtained the highest score on the writing exercise conducted on August 28, 2003.

55. Not only did the Department depart from its past practice of promoting the candidate with the highest score on the promotional civil service exam, but the "reasons" given for failing to promote Grady are false, inconsistent with her past performance evaluation and accomplishments on the job, and based upon an evaluation process that was largely subjective.

56. Further, the Department's history of failing to promote female officers and/or failing to give more-desired assignments to female officers further suggest that the decision was gender based. The Department currently has four females on the roster of approximately forty-three officers. Similar to Grady, other female officers have been bypassed for promotions and/or more-desired assignments over less-qualified males.

57. In approximately 1992, one of the other three female officers, Mary Walker, filed a charge of gender discrimination at the MCAD. The matter was ultimately resolved in Officer Walker's favor.

58. Not only was Grady not promoted to Lieutenant, but she was not even considered for the Detective Sergeant position that was formerly held by Donald Bliss. Despite her qualifications and expressed interest in the (higher-paid) Detective Sergeant position, in approximately October 2003, Chief Joyce instead assigned a male, Bradford Bulger, to the position.

59. As a result of the above-stated discrimination, Grady has sustained damages, including but not limited to, lost wages, less-favorable and/or lost benefits, and emotional distress.

60. In December of 2003 and March of 2004, in an attempt to resolve Grady's concerns, Grady's attorney complained on her behalf of sex discrimination to Chief Joyce and the Department's attorney, respectively. Corrective action was not taken.

61. On June 14, 2004, Grady timely filed a Charge of Discrimination with the MCAD and the EEOC alleging discrimination based on sex.

62. On September 21, 2004 the MCAD allowed Grady's request to withdrew her Charge of Discrimination from the MCAD to pursue a civil action.

63. On November 8, 2004, Grady obtained a Right to Sue Letter from the EEOC.

## COUNT I
## TITLE VII - SEX DISCRIMINATION
### (Against Department and Town)

64. Grady realleges and incorporates paragraphs 1 through 63 above as if fully set forth herein.

65. The Defendants have discriminated, and continue to discriminate against Grady, in the terms, conditions and privileges of her employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-1 et. seq., by, among other things, denying her advancement opportunities and/or failing to promote her and/or failing to provide her with higher paid assignments because of her sex.

66. As a direct and proximate result thereof, Grady has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, and emotional distress.

## COUNT II
## M.G.L. c. 151B, § 4(1) - SEX DISCRIMINATION
### (Against Department and Town)

67. Plaintiff Grady realleges and incorporates paragraphs 1 through 66 above, as if fully set forth herein.

68. The Defendants have discriminated, and continue to discriminate against Grady, in the terms, conditions and privileges of her employment in violation of the Massachusetts Fair Employment Practices Act, M.G.L. c. 151B, § 4(1), by, among other things, denying her advancement opportunities and/or failing to promote her and/or failing to provide her with higher paid assignments because of her sex.

69. As a direct and proximate result thereof, Grady has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, and emotional distress.

## COUNT III
## M.G.L. c. 151B, § 4(4A) - INTERFERENCE
### (Against All Defendants)

70. Grady realleges and incorporates paragraphs 1 through 69 above as if fully set forth herein.

71. By interfering with Grady's exercise or enjoyment of her right to be free of discrimination on the basis of sex, the Defendants have violated the Massachusetts Fair Employment Practices Act, M.G.L. c. 151B, § 4(4A).

72. As a direct and proximate result, Grady has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, and emotional distress.

## COUNT IV
## M.G.L. c. 151B, § 4(5) – AIDING, ABETTING, INCITING, COMPELLING AND/OR COERCION
### (Against Joyce and Hartman)

73. Grady realleges and incorporates paragraphs 1 through 72 above as if fully set forth herein.

74. By aiding, abetting, inciting, compelling or coercing violations of M.G.L. c. 151B § 4(1) against Grady, Joyce and Hartman have violated the Massachusetts Fair Employment Practices Act, M.G.L. c. 151B, § 4(5).

75. As a direct and proximate result, Grady has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, and emotional distress.

## COUNT V
## TORTIOUS INTERFERENCE WITH CONTRACTUAL/ADVANTAGEOUS EMPLOYMENT RELATIONS
### (Against Joyce and Hartman)

76. Grady realleges and incorporates paragraphs 1 through 75 above as if fully set forth herein.

77. Grady has a contractual and/or advantageous employment relationship with the Department and Town.

78. The individual Defendants were and are aware of Grady's existing or prospective contractual/advantageous employment relationships, set forth above.

79. The individual Defendants, with improper motive and/or through the use of improper means, intentionally interfered with Grady's contractual/advantageous employment relationships.

80. As a direct and proximate result, Grady suffered and continues to suffer damages including but not limited to, loss of income, loss of employment benefits, and emotional distress.

WHEREFORE, Grady requests that this Court:

1. Award Grady injunctive relief, including but not limited to, ordering the Defendants Wareham Police Department and Town of Wareham to promote Grady to the position of Lieutenant;

2. Award Grady damages for her lost wages and lost benefits plus interest;

3. Award Grady damages for her emotional distress;

4. Award Grady punitive damages;

5. Award Grady reasonable attorneys' fees and costs; and

6. Grant such further relief as the Court deems just and proper.

## JURY TRIAL CLAIM

Plaintiff hereby requests trial by jury on all claims so triable.

Respectfully Submitted,

EILEEN GRADY
By her attorneys,

Barbara A. Robb (BBO #639976)
Lawrence J. Casey (BBO #555766)
Perkins Smith & Cohen LLP
One Beacon Street, 30th Floor
Boston, MA 02108
617-854-4000

DATED: January 14, 2004.

11

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Eileen Grady

**DEFENDANTS** Wareham Police Department, Town of Wareham, Thomas Joyce and Michael J. Hartman

(b) County of Residence of First Listed Plaintiff **Barnstable**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **Plymouth**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

05 10097

(c) Attorney's (Firm Name, Address, and Telephone Number) 617-854-4000
Barbara Robb & Lawrence J. Casey
Perkins Smith & Cohen LLP, One Beacon Street, 30th fl.
Boston, MA 02108

Attorneys (If Known) Leonard K. Kasten, Esq. 617-880-7100
Deborah I. Ecker, Esq.
Brody Hardoon Perkins & Kesten, LLP, 12th Fl.
One Exeter Plaza, Boston, MA 02116

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): **Title VII**
Brief description of cause: **Sex discrimination in employment**

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ **500,000+ and Injunctive Relief**
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 1-14-05
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __Grady v. Wareham Police Department, et al.__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   - [ ] I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.
   - [x] II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.        *Also complete AO 120 or AO 121 for patent, trademark or copyright cases
   - [ ] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.
   - [ ] IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.
   - [ ] V.   150, 152, 153.

   05 10097

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES [ ]   NO [x]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

   YES [ ]   NO [x]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES [ ]   NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES [ ]   NO [x]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES [x]   NO [ ]

   A. If yes, in which division do all of the non-governmental parties reside?

      Eastern Division [x]   Central Division [ ]   Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

      Eastern Division [ ]   Central Division [ ]   Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

   YES [ ]   NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __Barbara Robb, Esq. & Lawrence J. Casey, Esq.__
ADDRESS __Perkins Smith & Cohen LLP, One Beacon Street, 30 Floor, Boston, MA 02108__
TELEPHONE NO. __617-854-4000__

(Coversheetlocal.wpd - 10/17/02)