UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| EILEEN GRADY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. NO. 05-10097 |
| WAREHAM POLICE DEPARTMENT, | ) | |
| TOWN OF WAREHAM, | ) | |
| THOMAS JOYCE (individually), and | ) | |
| MICHAEL J. HARTMAN (individually), | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS

### INTRODUCTION

Plaintiff Eileen Grady (formerly Eileen Hinckley) ("Sergeant Grady") brings this action against her employer Wareham Police Department ("the Department"), the Town of Wareham ("the Town") and certain individual defendants, alleging, among other things, discrimination on the basis of sex and unlawful retaliation.

Pursuant to Fed. R. Civ. P. 26(b) and Local Rule 37.1(B), Sergeant Grady hereby moves the Court to compel Defendants Wareham Police Department and Town of Wareham to produce documents responsive to Requests 7, 8, 9 and 10 of Plaintiff's First Request For Production Of Documents. Requests 7 and 8 seek employee personnel records relevant to Sergeant Grady's claims, and Requests 9 and 10 seek relevant documents concerning past promotions at the Department.

### FACTUAL BACKGROUND

*Sergeant Grady, The First Female Officer at the Wareham Police Department, Has Had A Successful Career In Law Enforcement*

Sergeant Grady began her law enforcement career in 1985 when the Wareham Police Department ("the Department") hired her as a Patrol Officer after she graduated from the state

training center with the 5th highest academic ranking. (Amended Complaint ¶ 8). She was the first female officer to be hired full time by the Department. (*See id.* ¶ 9).

In her near twenty years with the Department, Sergeant Grady, despite being subjected to adverse treatment because of her sex, has performed well as an officer and leader and has had numerous accomplishments. (*See id.* ¶ 10). From 1985 through 1996 she served as a Patrol Officer with responsibility for, among other things, investigating complaints, making arrests and providing court testimony. (*See id.* ¶ 11). As a Patrol Officer she received positive performance evaluations with ratings between a "4" and a "6" out of a rating scale of "1" to "7." (*See id.* ¶ 12).

In 1996, she was promoted to the position of Sergeant, and had responsibility for, among other things, supervising a minimum of five patrol officers and two dispatchers during the evening shift. As Sergeant, Sergeant Grady performed well. (*See id.* ¶ 13).

While working full time as a Patrol Officer and later as Sergeant, Sergeant Grady pursued degrees in criminal justice. (*See id.* ¶ 14). Sergeant Grady obtained her Bachelor of Science in Criminal Justice from Bridgewater State College in 1994, and her Master of Science in Criminal Justice from Western New England College in 2000. (*See id.*). Sergeant Grady also received numerous training certificates in specific areas. (*See id.* ¶ 15).

Throughout her tenure with the Department, Sergeant Grady was commended by the Department for her positive relations with the community. (*See id.* ¶ 16). Indeed, Sergeant Grady received a number of awards from various community organizations, including a Public Safety Award in 1988 from the Wareham Kiwanis Club, an Outstanding Community Service Award in 1990 from the Plymouth County Education Association, a Woman of the Year Award in 1992 from the Wareham Business and Professional Women's Club, and an Outstanding Service Award in 1992 and 1993 from the Plymouth County District Attorney. (*See id.*).

Sergeant Grady also consistently performed exceptionally well on police civil service examinations throughout her career. (*See id.* ¶ 17). For example, she obtained a perfect score of 100 on her entry-level civil service exam. (*See id.*)

### Sergeant Grady Is Subjected To Sex Discrimination By The Defendants

Despite her above-stated accomplishments and successes, Sergeant Grady was treated less favorably than her male peers based upon gender stereotypes, and was subjected to discriminatory treatment because of her sex. (*See id.* ¶ 18). As a result of this discrimination, male officers rose through the ranks in the Department more rapidly than did Sergeant Grady. (*See id.* ¶ 19). For example, when she began in 1985 with the Department Sergeant Grady was placed on desk duty while her male academy classmate, Kevin Walsh, was immediately assigned to patrol. (*See id.* ¶ 20). Male patrol officers told her that someone was likely to get hurt if she was on the road. (*See id.*)

After demanding equal treatment, Sergeant Grady was given sporadic and unstructured training at night. (*See id.* ¶ 21). She was then assigned to patrol, but was placed on the day shift while several of her male peers (some of whom started with the Department years after her, including Donald Bliss who started with the Department in 1987) were immediately assigned to the night shift. (*See id.*).

When Sergeant Grady first started with patrol, one of her supervisors, Sergeant Wayne Dudley, told her, "You don't belong here. I don't want you. I don't have time to baby-sit," or words to that effect. (*See id.* ¶ 22). Sergeant Dudley would also frequently make sexually offensive comments to her. (*See id.*).

In approximately 1990, there was an opening for the position of Sergeant. (*See id.* ¶ 23). Throughout the history of the Department, the Department's practice was to promote the candidates with the higher scores on the promotional civil service exam. (*See id.* ¶ 24). Sergeant Grady applied for the position and earned the second-highest score on the civil

3

service exam determining promotions to the position of Sergeant. (*See id.* ¶ 25). Chief

Thomas Joyce, deviating from the Department's practice of promoting candidates with the

higher scores, chose to bypass Sergeant Grady, citing her lack of night experience, and

instead promoted the third highest scorer, Glenn Gifford. (*See id.* ¶ 26). (Shortly thereafter,

the highest scoring examinee, Jeff Perry, was also promoted to Sergeant.) (*See id.*). Sergeant

Grady immediately requested and was granted reassignment to the night shift. (*See id.*).

In approximately 1992, a Sergeant position again became available within the

Department. (*See id.* ¶ 27). Despite the fact that Sergeant Grady's name was at the top of the

list, and she now had night experience, she still was not promoted. (*See id.*). Instead, Chief

Joyce ordered the administering of a new exam, claiming he had allegedly "forgotten" about

the existing list. (*See id.* ¶ 28). Sergeant Grady took the new exam in approximately 1992,

scoring fourth highest, and two males scoring ahead of her were promoted to Sergeant in

approximately 1992 and 1993 respectively (including Donald Bliss in approximately 1993).

(*See id.* ¶ 29).

In approximately 1994, a Detective position became available. (*See id.* ¶ 30).

Sergeant Grady applied for the position, but Chief Joyce decided to appoint a male patrol

officer, Preston Urquhart, to the Detective position. (*See id.*). Preston Urquhart started with

the Department in approximately 1988, and had less experience and less seniority than

Sergeant Grady. (*See id.*).

In approximately 1996, another Sergeant position became available, and, after a male

officer who was third on the list declined the position, the Department finally promoted

Sergeant Grady to the position of Sergeant. (*See id.* ¶ 31).

Thereafter, Chief Joyce subjected Sergeant Grady to demeaning treatment at Sergeant

meetings, which were often attended by Chief Joyce, and almost always attended by the

Department's Captain, the Lieutenant to whom Sergeant Grady reported and by all Sergeants

in the Department. (*See id.* ¶ 32). For example, when Chief Joyce would use words that were mildly offensive at best (e.g., "damn") at such meetings, he would sometimes cover Sergeant Grady's ears with his hands. (*See id.* ¶ 33). Other times, Chief Joyce would look directly at Sergeant Grady after using mildly offensive words and say in a patronizing tone, "Pardon my French young lady," or words to that effect. (*See id.* ¶ 34). Sergeant Grady (born July 31, 1954) was in her forties at the time Chief Joyce would make these comments. (*See id.*). Thus, Sergeant Grady was singled out in front of her peers and superiors, and embarrassed by the highest-ranking officer in the Department, because of her sex. (*See id.* ¶ 35).

Despite this adverse treatment, Sergeant Grady worked hard and received a positive performance review in 1999 from her superiors, Captain Paul Cardalino and Lieutenant Arthur Brightman, regarding her performance as a Sergeant. (*See id.* ¶ 36). In her review, she was commended for, among other things, her leadership and supervision abilities. (*See id.* ¶ 37). In addition, during Sergeant Grady's tenure as Sergeant three separate murders occurred while she was on duty as shift supervisor of several patrol officers. (*See id.* ¶ 38). Her leadership, judgment and decision-making contributed to her shift's efficient response and execution of proper procedures. (*See id.*). Suspects were arrested in all three murders. (*See id.*).

### *Sergeant Grady Is Not Promoted To Lieutenant Because Of Her Sex*

In or about July 2001, a Lieutenant position became available in the Department and there were three candidates for the position: Sergeant Grady, Detective Sergeant Donald Bliss, and Sergeant Glen Gifford. (*See id.* ¶ 39). Throughout the history of the Department, the practice had been that the candidate with the highest score on the Lieutenant promotional civil service exam was promoted. (*See id.* ¶ 40). However, knowing full well that Sergeant Grady had a reputation for scoring high on civil service exams, in July 2001 Chief Joyce announced an unprecedented multi-faceted selection process for promoting Sergeants and

Lieutenants. (*See id.* ¶ 41). The factors included a promotional test score, a Department interview, a review of performance and personnel records, and an evaluation conducted by an outside assessment center. (*See id.*). This was the first and last time that this "multi-faceted" selection process was used. (*See id.* ¶ 42).

On October 20, 2001, Sergeant Grady sat for the Lieutenant promotional exam along with the other candidates, and on December 17, 2001 the exam results were announced. (*See id.* ¶ 43). Sergeant Grady obtained the highest score of 88, which far exceeded those of the other candidates. (*See id.*). Glen Gifford obtained the second-highest score of 78, and Donald Bliss obtained the third-highest score of 75. (*See id.*).

Nearly two years later, on August 28th and 29th of 2003, the other candidates for the Lieutenant position and Sergeant Grady underwent an evaluation by an assessment center that was almost entirely subjective. (*See id.* ¶ 44). The evaluation was conducted by the BadgeQuest Assessment Center, which used three male assessors (Chief William Chase, Chief Lincoln Miller and Chief Gary Russell), and was coordinated by another male, Chief Stephen Unsworth. (*See id.* ¶ 45).

As part of the BadgeQuest process, Chief Joyce appointed two of the assessors. (*See id.* ¶ 46). Of the two assessors chosen by Chief Joyce, one was Chief Miller of the Marion Police Department. (*See id.*). Chief Miller's department has never had a female officer. Further, Chief Miller is a longtime friend of Chief Joyce (Chief Joyce served as the best man in both of Chief Miller's weddings). (*See id.* ¶ 47). Although the assessors were charged with evaluating the candidates, the ultimate selection was made by Chief Joyce, which was then approved by the Town of Wareham's Town Administrator, Michael J. Hartman. (*See id.* ¶ 48).

The evaluation conducted on August 28th, 2003 was a writing exercise. (*See id.* ¶ 49). The evaluation conducted on August 29th, 2003 was a series of four exercises, followed

6

by an oral interview, all conducted by and in the presence of the assessors. (*See id.* ¶ 50). For example, the first exercise given on August 29th, 2003, required that Sergeant Grady respond to a mock citizen complaint in the presence of the assessors. (*See id.*). In addition, on August 29th, 2003, during "down time" the other candidates and Sergeant Grady were given a second writing exercise that was evaluated by Chief Joyce. (*See id.*).

Approximately one week after August 29, 2003, the other candidates and Sergeant Grady were individually interviewed by Chief Joyce. (*See id.* ¶ 51). During the interview, Sergeant Grady told Chief Joyce that she was also interested in the (higher-paid) Detective Sergeant position then held by Donald Bliss should that position become available if she was bypassed and Donald Bliss was promoted to Lieutenant. (*See id.*).

On or about September 24, 2003, Chief Joyce notified Sergeant Grady of the Department's selection for promotion to Lieutenant. (*See id.* ¶ 52). Despite the considerable gap between the civil service exam scores of herself and Donald Bliss and the considerable gap in their education levels (Sergeant Grady has a Masters Degree while Donald Bliss has an Associates Degree), the Department bypassed Sergeant Grady and instead promoted Donald Bliss. (*See id.*).

As its purported reason for the bypass decision, the Department stated vaguely that Sergeant Grady "did not fare well in the categories of Leadership, Judgment and Decision Making," despite the fact that her overall BadgeQuest score of 7.4 (which included Leadership, Judgment and Decision Making) qualified for the above-average rating of "Very Good." (*See id.* ¶ 53). Further, the afore-mentioned highest civil service exam score of 88 covered the skill areas of leadership, judgment and decision-making. (*See id.*). The Department also stated vaguely that, in both the writing exercise and oral interview, Sergeant Grady allegedly did not provide suggestions to solve identified problems, despite the fact that

she obtained the highest score on the writing exercise conducted on August 28, 2003. (*See id.* ¶ 54).

Not only did the Department depart from its past practice of promoting the candidate with the highest score on the promotional civil service exam, but the "reasons" given for failing to promote Sergeant Grady are false, inconsistent with her past performance evaluation and accomplishments on the job, and based upon an evaluation process that was largely subjective. (*See id.* ¶ 55).

Further, the Department's history of failing to promote female officers and/or failing to give more-desired assignments to female officers further suggest that the decision was gender based. (*See id.* ¶ 56). The Department currently has four females on the roster of approximately forty-three officers. (*See id.*). Similar to Sergeant Grady, other female officers have been bypassed for promotions and/or more-desired assignments over less-qualified males. (*See id.*). In approximately 1992, one of the other three female officers, Mary Walker, filed a charge of gender discrimination at the Massachusetts Commission Against Discrimination ("MCAD") against the Department. (*See id.* ¶ 57). The former Town Administrator determined that there was gender discrimination, the MCAD found probable cause, and the Department settled the case. (*See id.*).

***Sergeant Grady Is Not Given The Position Of Detective Sergeant Because Of Her Sex***

Not only was Sergeant Grady not promoted to Lieutenant, but she was not even considered for the Detective Sergeant position that was formerly held by Donald Bliss. (*See id.* ¶ 58). Despite her qualifications and expressed interest in the (higher-paid) Detective Sergeant position, in approximately October 2003, Chief Joyce instead assigned a male, Bradford Bulger, to the position. (*See id.*)

In December of 2003 and March of 2004, in an attempt to resolve Sergeant Grady's concerns, Sergeant Grady's attorney complained on her behalf of sex discrimination to Chief

8

Joyce and the Department's attorney, respectively. (*See id.* ¶ 59). Corrective action was not taken. (*See id.*).

### *Sergeant Grady Is Retaliated Against By The Defendants For Asserting Her Claims Of Sex Discrimination*

From September 2004 through November 8, 2004 (after complying with administrative filing requirements) Sergeant Grady took steps to pursue her discrimination claims in court. (*See id.* ¶¶ 60-61). On January 14, 2005, Sergeant Grady filed this action asserting claims of sex discrimination in employment in violation of G.L. c. 151B and Title VII against the Defendants. (*See id.* ¶ 62). On or about January 29, 2005 and thereafter, this lawsuit was reported in the local newspapers. (*See id.* ¶ 63). On or about February 1st and 2nd of 2005, the Defendants were served with the complaint in this action. (*See id.* ¶ 64).

Shortly after Sergeant Grady took steps to pursue her claims in court, the Defendants began retaliating against her. (*See id.*). For example, on or about November 11, 2004, she received a written reprimand dated November 1, 2004 from Lieutenant Bliss (cc'd to Chief Joyce) regarding an unsecured weapon without first being spoken to about the issue (which is the usual practice and/or procedure at the Department). (*See id.* ¶ 65). Other Sergeants (who have not asserted claims of discrimination) were not similarly reprimanded for similar incidents. (*See id.*).

On or about March 10, 2005, Sergeant Grady was suspended from duty without pay by Chief Joyce regarding her approval of a subordinate's police report that contained spelling and/or grammar errors and that Chief Joyce alleged was not sufficiently detailed. (*See id.* ¶ 67). Not only has Sergeant Grady never been suspended from duty (excluding detail) in her near twenty years with the Department, but throughout the history of the Department no officer has been suspended for similar reasons (i.e., approval of a subordinate's report containing spelling and/or grammar errors, or lacking sufficient detail). (*See id.*).

Around the time of her suspension, Chief Joyce began calling patrol officers (including officers who report directly to Sergeant Grady) into his office to ask them a list of questions, including "Which Sergeant is your favorite?" and "Which Sergeant is the worst?," or questions to that effect, in an obvious attempt to gain allegiance from patrol officers with regard to Sergeant Grady's sex discrimination claims. (*See id.* ¶ 68). In addition, on or about March 18, 2005, Chief Joyce called one of the patrol officers into his office and told her that Sergeant Grady was suspended from duty not for spelling errors, but for "incompetence" when this officer had no need to know such information. (*See id.* ¶ 69). Sergeant Grady has learned from other patrol officers (who report directly to Sergeant Grady) that Chief Joyce also spoke with them about her suspension when these officers had no need to know such information. (*See id.*).

More recently (in August and September of 2005), and shortly after the depositions of Chief Joyce and Lieutenant Bliss were noticed in this case, Sergeant Grady received two back-to-back, five-day suspensions for (1) alleged untruthfulness, insubordination, and incompetence concerning her bringing her dog to the police station in mid May 2005; and (2) alleged untruthfulness and incompetence concerning her registration of a sex offender in mid May 2005. Immediately after these incidents occurred, Lieutenant Bliss and Chief Joyce conducted "investigations," which included reviewing tape from several video surveillance cameras over the course of several days, and having other officers sign written questions and answers regarding Sergeant Grady's dog. Notably, these suspensions were given several months after the incidents occurred, and several months after the Department had concluded its "investigations." The suspensions were also given without any use of progressive discipline in contravention of the Departments' policies and/or practices.

Sergeant Grady has worked for the Department for nearly twenty years, and was never suspended (excluding detail) until she asserted claims of sex discrimination against the

10

Defendants. After asserting claims of sex discrimination, Sergeant Grady has been suspended three times.

## COMPLIANCE WITH LOCAL RULE 37.1(A)

The provisions of Rule 37.1(A) were complied with. Counsel (Barbara Robb, Esq. on behalf of Sergeant Grady and Deborah Ecker, Esq. on behalf of the Defendants) conferred over the telephone three times (on August 30, 2005, October 12, 2005 and October 26, 2005) for approximately twenty minutes each time in good faith to narrow the areas of disagreement to the greatest possible extent.

## ARGUMENT

A.    **Introduction**

The scope of discovery in a civil action is broad. Parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

B.    **Personnel Records – The Use Of Which Is The Most Probative Means Of Proving Claims Of Discrimination And Retaliation**

*1.    Document Requests and Defendants' Responses*

REQUEST NO. 7:

The personnel records of Eileen Grady, Mary Walker, Susan Kucinski, Zina Kelsch, Jeffery Perry, William Delaney, Donald Bliss, Glenn Gifford, Presten Urquhart, Bradford Bulger and Thomas Joyce as such records are defined under G.L. c. 149, § 52C.

RESPONSE NO. 7:

Objection. The Defendant objects to this request on the grounds that it is overbroad, not properly limited as to time, and it seeks documents that are not relevant to the subject matter of this action, which will be inadmissible at the trial of this action and which is not

11

reasonably calculated to lead to the discovery of admissible evidence. The Defendants further object on the grounds that information contained in the documents requested is confidential. Without waiving these or any other objections, the Defendants respond as follows.

The Defendants produce the following responsive documents currently in the Defendants' possession, custody or control.

Exhibit 4 -    Ms. Grady's personnel file.

REQUEST NO. 8:

The personnel records of all officers who were candidates for and/or promoted to Sergeant or Lieutenant from 1980 to the present, as such records are defined under G.L. c. 149, § 52C.

RESPONSE NO. 8:

Objection. The Defendant objects to this request on the grounds that it is overbroad, not properly limited as to time, and it seeks documents that are not relevant to the subject matter of this action, which will be inadmissible at the trial of this action and which are not reasonably calculated to lead to the discovery of admissible evidence. The Defendants further object on the grounds that information contained in the documents requested is confidential.

### 2.    *Argument*

The most probative means of establishing that a plaintiff was discriminated against on the basis of sex is to demonstrate that similarly situated male employees were treated differently. *Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 129 (1997) (citation omitted). The plaintiff must identify and relate specific instances where males similarly situated were treated differently.

Courts customarily allow a plaintiff to obtain relevant personnel records in order to make this demonstration. *See, e.g., Jackson v. Harvard Univ.*, 111 F.R.D. 472, 475-476 (D. Mass. 1986) (permitting discovery of tenure files of male employees granted tenure over a 10-

year period to provide plaintiff with an opportunity to demonstrate that female employees with similar qualifications were evaluated under a stricter standard, and recognizing that such documents may raise doubt as to whether defendant's reasons for adverse employment actions were real ones); *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991 ("[C]ourts have customarily allowed a wide discovery of personnel files" in discrimination cases, finding the district court had abused its discretion in limiting such discovery); *Weahkee v. Norton*, 621 F.2d 1080, 1082 (10th Cir. 1980) (finding that the district court abused its discretion by denying the plaintiff in a discrimination case discovery of co-workers' personnel files where comparative job performances were at issue; *Ladson v. Ulltra East Parking Corp.*, 164 F.R.D. 376 (S.D.N.Y. 1996) (ordering defendants to produce complete personnel files for current and former employees and supervisors employed by the defendants; concerns of privacy can be addressed by a protective order).

      *a.*    *Male Officers Promoted Over Sergeant Grady*

In Request 7, Sergeant Grady has requested the personnel records of male officers who have been promoted over her (i.e., Jeffery Perry, Donald Bliss, Glenn Gifford, Presten Urquhart and Bradford Bulger). Indeed, Sergeant Grady, in proving her prima facie case of failure to promote because of sex, must show that males with similar qualifications to her were promoted over her. *See, e.g., Ramos v. Roche Products, Inc.*, 936 F.2d 43, 47 (1st Cir. 1991); *Radvilas v. Stop & Shop, Inc.*, 18 Mass. App. Ct. 431, 439-440 (1984). Accordingly, she needs the personnel records of male officers promoted over her to show that she was as qualified as them.

>   b.    *Males Eligible For Promotion and/or Promoted To Sergeant or Lieutenant From 1980 to the Present*

In Request 8, Sergeant Grady has requested the personnel records of all male candidates eligible[1] for a promotional appointment to Sergeant or Lieutenant from 1980 to the present. One of the theories of Sergeant Grady's case is that the Department has historically promoted the candidate with the highest civil service exam score, except when a woman (Sergeant Grady) was in the running. A deviation from a past promotional practice is evidence of discriminatory motive and causation. *See, e.g., Kealy v. City of Lowell, Dept. of Public Schools*, 21 MDLR 19, 21-22 (1999); *Alves v. Town of Freetown Police & Board of Selectmen,* 18 MDLR 112, 115 (1996).

The male officers with the highest promotional civil service exam scores who were promoted are certainly similarly situated to Sergeant Grady under her theory in this case, i.e., males—like Sergeant Grady—who scored the highest (or higher) on the promotional civil service exam were—unlike Sergeant Grady—almost always promoted.

The personnel records of male promotional candidates who were not promoted (i.e., the two of the three candidates who were not promoted) are also needed to show that the Defendants' purported non-discriminatory reason for not promoting Sergeant Grady (to Sergeant in the past and more recently to Lieutenant) is a pretext for discrimination. For example, the Defendants assert that Sergeant Grady was not promoted to Lieutenant because she allegedly "did not fare well" in the categories of leadership, judgment and decision making during the assessment center. All past (i.e., to 1980) male Lieutenant candidates' personnel records are needed, therefore, to determine if the male candidate with the highest

---

[1] There have been approximately thirteen promotions (in total) to Sergeant and Lieutenant at the Department from 1980 until now. Under civil service rules, the Department can only consider for promotion the top three candidates with the highest scores on the civil service exam. Accordingly, Sergeant Grady is requesting the production of personnel files for approximately 39 male officers. (This number is likely smaller since Sergeant Grady was in the running for a promotion three times during this time period, and other male officers were candidates for promotion more than once).

civil service exam score was promoted despite the fact that a male candidate with a lower

civil service exam score had stronger skills in the areas of leadership, judgment and decision-

making.

As another example, the Defendants asserted that Sergeant Grady was not promoted to

Sergeant in 1990, and promoted a male who scored lower than her on the civil service exam,

allegedly because she lacked night experience. Accordingly, all past (i.e., to 1980) male

Sergeant candidates' personnel records are needed to determine if the male candidate with the

higher civil service exam score was promoted despite having a lack of night experience,

and/or less night experience than the male candidates with lower scores.

Documents are needed from 1980, five years before Sergeant Grady began working at

the Department (in 1985), because it is believed that events relating to a Lieutenant promotion

(the promotion of Lieutenant Irving Wallace) occurred during this time period. Lieutenant

promotions at the Department are few and far between; there have been only two permanent

Lieutenant promotions (Lieutenant Wallace and Lieutenant Arthur Brightman) since 1980 and

prior to the most recent Lieutenant promotion (in 2003) that is at issue in this case.

Further, the records requested include the personnel records of Sergeant Grady's male

peers (i.e., Sergeant Glen Gifford, Sergeant Presten Urquart, Sergeant William Delaney,

Sergeant Douglas Jacinto, and Sergeant John Walcek[2]). Sergeant Grady has claims of

retaliation for, among other things, being disciplined and scrutinized more harshly for

performance/conduct issues than Sergeants who did not similarly assert claims of

discrimination. Accordingly, a review of the other Sergeants' personnel records is needed to

prove her retaliation claims.

---

[2] The personnel files of Sergeant Jacinto and Sergeant Walcek are covered by Request No. 8 since they were promoted to Sergeant during the time period of 1980 to the present.

15

c.    *Personnel Records of Female Officers*

In Request 7, Sergeant Grady also requested the personnel records of female officers currently at the Department (Officer Mary Walker, Officer Susan Kucinski, and Officer Zina Kelsch) who were also subjected to sex discrimination by the Department. Specifically, similar to Sergeant Grady, these women have been bypassed for promotions and/or more-desired assignments over less-qualified males. As such, their personnel records are needed to review and compare their qualifications to that of the male officers who were given the promotions and/or more-desired assignments.

d.    *Personnel Records of Sergeant William Delaney*

In Request 7, Sergeant Grady has also requested the personnel records of her male peer, Sergeant William Delaney. Sergeant Grady was retaliated against when she received a written warning for an unsecured weapon. Indeed, Sergeant Delaney had left several large knives exposed on his desk for a significant period of time (and during the same time period that Sergeant Grady left an unsecured weapon in her locker), and was not asked to remove them until Sergeant Grady pointed out that she was being singled out (compared to Sergeant Delaney). Even when Sergeant Delaney was asked to remove the knives, it is believed that he, unlike Sergeant Grady, was not given a written warning, or criticized in any way, for having left the knives exposed. Accordingly, a review of Sergeant Delaney's personnel records is needed to confirm this fact. Further, a review of his records is needed to compare the Department's treatment of him compared to its treatment of Sergeant Grady regarding other retaliatory reprimands and suspensions that Sergeant Grady has recently received for alleged performance and conduct issues.

e.    *Personnel Records of Chief Thomas Joyce*

In Request 7, Sergeant Grady also requests the personnel records of

16

Defendant Chief Thomas Joyce. A review of Chief Joyce's records is necessary to support

Sergeant Grady's theory that the Department has historically promoted males with the highest

scores on promotional civil service exams. Chief Joyce received the highest score on his

promotional exam for Chief, and was thereafter promoted to Chief. A review of Chief

Joyce's personnel records is also necessary to determine if he has ever been accused of

engaging in discrimination and/or has ever been counseled, criticized and/or reprimanded for

an allegation of discrimination.

### f.    Confidentiality and/or Privacy

To the extent that the Defendants argue that personnel records cannot be produced

because they are confidential and/or private, such concerns can be easily addressed by a

protective order that would restrict the number of persons permitted to review such

documents (e.g., Plaintiff's counsel and the Plaintiff), and require such persons not to divulge

the contents of such records to anyone other than the Court. Further, confidential information

contained in the records about suspects, victims or witnesses can be redacted.

## C.    **Documents Concerning Promotional Appointments From 1980 to 1987**

### 1.    *Document Requests And Defendants' Responses*

REQUEST NO. 9:

Any and all documents concerning promotions to Sergeant, Lieutenant, Captain, and

Chief at the Wareham Police Department from 1980 to the present, including, but not limited

to, all civil service documents and lists.

RESPONSE NO. 9:

Objection. The Defendants object to this request on the grounds that it is overbroad,

not properly limited as to time, and it seeks documents that are not relevant to the subject

matter of this action, which will be inadmissible at the trial of this action and which is not

reasonably calculated to lead to the discovery of admissible evidence. Without waiving these or any other objections, the Defendants respond as follows.

The Defendants produce the following responsive documents currently in the Defendants' possession, custody or control.

Exhibit 5 -    Civil Service Documents for Entry Level Police Officer Positions and Civil Service Documents for Promotional Appointments and Examinations from 1985 to the present.

REQUEST NO. 10:

Any and all documents concerning the administering of promotional civil service exams from 1980 to the present.

RESPONSE NO. 10:

Objection. The Defendants objects to this request on the grounds that it is overbroad, not properly limited as to time, and it seeks documents that are not relevant to the subject matter of this action, which will be inadmissible at the trial of this action and which is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these or any other objections, the Defendants respond as follows.

The Defendants produce the following responsive documents currently in the Defendants' possession, custody or control.

Exhibit 5 -    Civil Service Documents for Entry Level Police Officer Positions and Civil Service Documents for Promotional Appointments and Examinations from 1985 to the present.

    2.    *Argument*

Defendants have refused to produce many relevant requested documents, and have produced numerous documents that were not requested (i.e., civil service documents for entry level police officers). Defendants have only produced documents from 1987 to the present

18

and are refusing to produce any documents that fall into the time frame of 1980 to 1987, arguing that only documents during the time period that Sergeant Grady was employed (1985 until the present)[3] are relevant. Defendants have also refused to produce any documents concerning the promotions to Captain (Captain Paul Cardalino was promoted to Captain in approximately 1987) and Chief (Chief Joyce was promoted to Chief in approximately 1988).

A central theory in Sergeant Grady's case is that, with regard to promotional appointments (i.e., promotions to Sergeant, Lieutenant, Captain and Chief), the Department has historically promoted the candidate with the highest score on the promotional civil service exam, and the Department departed from this practice when a woman (Sergeant Grady) was in the running. A deviation from a past promotional practice is evidence of discriminatory motive and causation. *See, e.g., Kealy v. City of Lowell, Dept. of Public Schools*, 21 MDLR 19, 21-22 (1999); *Alves v. Town of Freetown Police & Board of Selectmen,* 18 MDLR 112, 115 (1996).

Clearly, documents concerning all levels of promotional appointments (i.e., promotions to Sergeant, Lieutenant, Captain, and Chief) are relevant to this theory. Further, since this theory involves a *historical* practice, the time period of 1980 until the present is not unreasonable. Notably, events relating to another Lieutenant promotion (i.e., when Lieutenant Wallace was promoted)[4] occurred during the time period of 1980 to 1987.

Moreover, the documents requested also include the Department's requests to the civil service department for a new promotional exam and/or eligibility list. In this case, Sergeant Grady alleges that, in 1992, she was first on the list for promotion to Sergeant; however, the Chief, instead of promoting her, requested a new promotional exam (despite the fact that a

---

[3] It is unclear why Defendants are refusing to produce documents from the time period of 1985 to 1987 when Sergeant Grady was employed by the Department during those two years. Notably, they have refused to produce documents concerning the promotion of a male (Jonathan Philbrook) to Sergeant in approximately 1986 who is believed to have had the highest score on his civil service exam.

promotional Sergeant exam had been taken just two years earlier), claiming (unbelievably)

that he had "forgotten" about the existing list.  Therefore, Sergeant Grady needs all requests

for promotional exams and/or eligibility lists from 1980 through 1992 to show that it was

unusual for the Department not to promote the next candidate (Sergeant Grady) on the list in

1992, and order the administering of a new exam.

### CONCLUSION

For the reasons discussed above, the Plaintiff's motion should be allowed.

Respectfully Submitted,

EILEEN GRADY
By her attorneys,

/s/ Barbara A. Robb
Lawrence J. Casey (BBO #555766)
Barbara A. Robb (BBO #639976)
Shilepsky O'Connell Casey Hartley
Michon Yelen LLP
225 Franklin Street, 16th Floor
Boston, MA  02110-2898
DATED: October 27, 2005                   617-723-8000

---

[4] The Department currently employs three Lieutenants: Lieutenant Irving Wallace, Lieutenant Arthur Brightman and Lieutenant Donald Bliss.